**HOFFMAN ELECTRIC, INC., Lawrence R. Musselman & Georgiana R. Musselman, as Co–Trustees of the Lawrence R. Musselman and Georgiana R. Musselman Trust, and Walter Winius, Jr., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**EMERSON ELECTRIC COMPANY, a foreign corporation, Load Management Development Corporation, a foreign corporation and Harold F. Faught, Defendants.**

Civ. A. No. 90–72E.

United States District Court,
W.D. Pennsylvania.

Jan. 15, 1991.

**1074**

Philip B. Friedman, Ambrose & Friedman, Erie, Pa. and David F. Dobbins, Patterson, Delknap, Webb & Tyler, New York City, for plaintiffs.

Edwin L. Klett, Klett Lieber Rooney & Schorling, Pittsburgh, Pa. and John Michael Clear, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants.

## OPINION

COHILL, Chief Judge.

Plaintiffs, investors in a limited partnership known as Emerson Research Partners L.P. ("ERP"), brought this class action against Emerson Electric Co. ("Emerson"), Load Management Development Corporation ("LMDC"), and Harold F. Faught, arising from Emerson's purchase of the assets of ERP. The complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder; Section 14(e) of the Exchange Act, 15 U.S.C. § 78n(e); Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.; breach of fiduciary duty; and common law fraud. We have jurisdiction pursuant to 15 U.S.C. § 78aa, 18 U.S.C. § 1964(c), 28 U.S.C. § 1331, and upon principles of pendent jurisdiction. Presently before us is plaintiffs' Motion for Class Certification, defendants' Motion to Dismiss, or, in the alternative, Motion for Partial Summary Judgment.

*Background*

In 1983, ERP was formed to develop, manufacture, and market a two-way automatic communication system ("TWACS") to be used by electric utilities companies in the United States to reduce peaks in demand for electrical power through remote control. TWACS was ERP's principal asset. ERP was managed by LMDC, a wholly-owned subsidiary of Emerson. The president of LMDC is Harold F. Faught, who is also Emerson's Vice–President of Technology.

Following the formation of ERP, ERP entered into three agreements:

1. A Development Agreement with Emerson under which ERP agreed to reimburse Emerson for certain costs of research of TWACS;

2. A Joint Venture Agreement with Emerson to field test, manufacture, and market TWACS;

3. A Partnership Purchase Option Agreement which was executed by ERP, LMDC, Emerson, and ERP's limited partners under which Emerson was granted the right, for a period of 120 days after September 30, 1989 under either the "Stock Payment Option" or the "Revenue Payment Option," to purchase, at its sole option, the limited partnership interests.

In 1983, through an initial public offering, interests in ERP were sold to over 200 investors who thus became ERP's limited partners.

In 1988, after years of financial losses, Morgan Guaranty Trust Company ("Morgan Guaranty") of New York was hired to find a buyer for ERP. Morgan Guaranty located only one potential buyer, and that potential buyer was willing to offer only $3 million. After this, the idea of selling ERP was abandoned.

In 1989, Emerson offered to purchase all of the assets of ERP for $10 million, or approximately $50,505 per limited partnership unit. This amount was approximately half of the limited partners' initial investment. The offer was contained in a proxy statement that was sent to ERP's limited partners on November 13, 1989. The proxy statement included a statement that Emerson believed the offered price was fair, but advised that the deal was not negotiated at arm's length, therefore the limited partners should consult their own investment advisors. The proxy statement also contained a statement that neither LMDC nor Emerson's Board of Directors would make a recommendation because of conflicts of interest. Furthermore, an opinion by Oppenheimer & Co., Inc. ("Oppenheimer") opining that Emerson's offer was fair from a financial point of view was contained in the proxy statement.

On December 20, 1989, the majority of ERP's limited partners voted to accept this offer.

Plaintiffs brought this lawsuit, essentially alleging that defendants entered into a scheme to buy out ERP's assets at an unfairly low price. Plaintiffs argue that the proxy statement was false and misleading for several reasons: it did not inform ERP's limited partners that Emerson's Board of Directors had actually authorized a buyout price of up to $12 million; it did not include detailed and reliable internal projections and financial information which showed that TWACS was on the verge of becoming highly profitable; it excluded information about the marketing plans for TWACS; it failed to provide an accurate appraisal of what an outside buyer would offer for the assets of ERP; it neglected to disclose the value of other options that might be available to ERP's limited partners if Emerson exercised its Purchase Option, which came due the month after the December 22, 1989 vote; it hid the fact that LMDC and Emerson were negotiating both sides of the deal, which resulted in a buyout price favorable to Emerson and unfavorable to ERP; and it hid the fact that Harold Faught was both President of LMDC and Emerson's Vice–President of Technology.

### CLASS CERTIFICATION

Plaintiffs moved for class certification under Fed.R.Civ.P. 23(b)(3), and defined the class as "all persons who, on or about December 20, 1990, redeemed or sold limited partnership interests in Emerson Research Partners L.P."

■ To be certified as a class action under Rule 23(b)(3), plaintiffs must satisfy each of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). The burden of proving that the requirements of Rule 23(b)(3) have been met is on the party seeking to certify the class action. *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974). Furthermore, the interests of justice require that in a doubtful case any error, if there is to be one, should be committed in favor of allowing the class action. *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

A. Rule 23(a)

Rule 23(a) provides:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

#### 1. Numerosity

■ To satisfy numerosity, the class must be so numerous that joinder of all members is impracticable. *Weiss v. York Hosp.,* 745 F.2d 786, 807–808 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). "Impractical," however, does not mean impossible. 7A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 1762 (2d ed., 1986).

■ Plaintiffs assert that the proposed class, which consists of over 100 limited partners throughout the United States, is so numerous and so geographically disbursed that joinder of all members is impracticable. Defendants do not challenge the numerosity requirement.

We conclude that the numerosity requirement has been met.

#### 2. Commonality

■ Commonality requires that there be questions of law or fact common to the class, although not all questions of law and fact raised need be in common. *Weiss v. York Hosp.,* 745 F.2d 786, 808–809 (3d Cir. 1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

■ Plaintiffs maintain that there are questions of law and fact common to the putative class that arose when the investors were allegedly duped into parting with valuable limited partnership shares for substantially less than fair market value by defendants. Plaintiffs claim that the main

issues relate to whether the proxy statement contained false and misleading information and whether the defendants entered into a criminal conspiracy, committed securities and common law fraud, and breached their fiduciary duties. Defendants do not contest the commonality element.

We conclude that the commonality element has been established.

### 3. Typicality

■ Typicality exists when the legal or factual positions of the class representatives are sufficiently similar to the legal or factual positions of the other class members. *Eisenberg v. Gagnon,* 766 F.2d at 786. "Typical" is not identical. *Id.* The typicality requirement overlaps with the commonality requirement and the requirement of fair and adequate representation. *Id.*

■ Plaintiffs assert that their claims are the same as the claims of the putative class, for they were all investors who sold their interests in the limited partnership in reliance on the omissions and false and misleading information contained in the proxy statement. Furthermore, plaintiffs assert that as a result of the omissions and false and misleading information within the proxy statement, defendants entered into an unlawful conspiracy, committed securities and common law fraud, and breached their fiduciary duties. Defendants to not challenge the typicality element.

We hold that the typicality element has been met.

### 4. Fair and Adequate Representation

■ Adequate representation requires: (a) the plaintiff must not have interests antagonistic to those of the class, and (b) the plaintiff's attorney must be qualified, experienced, and competent to conduct the proposed litigation. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The burden is on the defendants to prove that the representation will be inadequate. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

#### a. Plaintiffs' Interests

■ Defendants first argue that plaintiffs will not be able to fairly and adequately protect the interests of the class because the credibility of the named plaintiffs is questionable. Defendants claim that plaintiffs are "less than honest and forthright." Defendants' Memorandum in Opposition to Class Certification, p. 31 ("Defts.' Mem. ____."). The defendants also point out specific sections in the plaintiffs' depositions, claiming that the plaintiffs' deposition testimony is "confused," "incredible," "evasive," "unsure," "inconsistent," and "contradictory." Defts.' Mem. 33–34.

We do not agree with the defendants' argument. We recognize that the credibility of a plaintiff may be considered by the trial judge in determining the plaintiff's adequacy as a class representative. *See Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981) (the Court of Appeals for the Second Circuit affirmed the District Court's conclusion that plaintiff's lack of credibility rendered her an inadequate class representative), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982), *vacated as moot sub nom, Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982). In that case plaintiff's lack of credibility was abundantly clear because she gave no less than four different and contradictory versions of a key conversation that she had with her stockbroker. In this case, however, the defendants point out instances in plaintiffs' depositions where they claimed, "I don't recall," (Musselman Dep. 137, Doerfler Dep. 241); "I cannot unequivocally say," (Winius Dep. 141); and "I'm not sure. I can't recall." Doerfler Dep. 249. We conclude that plaintiffs' uncertainty in answering certain questions, particularly when there are no obvious contradictions in their responses, is no reason to preclude class certification.

■ Second, defendants argue that plaintiffs will not be able to fairly and adequately protect the interests of the class because the named plaintiffs lack familiarity or knowledge about the case. The

defendants illustrate several instances where plaintiffs cannot explain certain things, including why the lawsuit was filed in Erie, Pennsylvania (Musselman Dep. 34–35), why the complaint was amended (Musselman Dep. 57, Winius Dep. 82), who decided to retain the law firm of Ambrose and Friedman, (Doerfler Dep. 301), and who decided to file an amended complaint. Doerfler Dep. 302.

Again, we do not agree with the defendants. The Court of Appeals for the Third Circuit has rejected the argument that personal knowledge about the material facts in support of the plaintiff's claim is an element of adequacy of representation. *Lewis v. Curtis*, 671 F.2d at 789. Such a requirement does not make vigorous representation of the class any more likely. *Id.* The adequacy of representation test is not concerned with whether the plaintiff personally derived the information pleaded in the complaint or whether the plaintiff will personally be able to assist counsel. *Id.* In addition, it can be argued that the sorts of questions we have just quoted from the Musselman and Doerfler depositions are "legal" questions which a layman might not be expected to be able to answer.

We hold that plaintiffs' lack of knowledge of certain facts about the case, especially in a securities case such as this, is not a reason to deny certification of the class.

Third, defendants argue that plaintiffs will not be able to fairly and adequately protect the interests of the class because each plaintiff is subject to an individual defense of nonreliance on the proxy statement. This argument is addressed below under the "predominance" heading.

b. Plaintiff's Attorney

Plaintiffs' counsel of record is Philip Friedman from the Erie, Pennsylvania law firm of Ambrose and Friedman and David Dobbins of the New York, New York law firm of Patterson, Belknap, Webb & Tyler ("Patterson Belknap"). Although the defendants do not challenge the competency of plaintiffs' counsel, defendants claim that plaintiffs will not be able to protect the interests of the putative class for three primary reasons.

First, defendants maintain that plaintiffs' counsel, not plaintiffs, appear to be the driving force behind this case. We disagree. The three named plaintiffs in this case, Lawrence R. Musselman, Walter Winius, Jr., and William F. Doerfler, are non-lawyers. One named plaintiff, Mr. Musselman does not consider himself to be an experienced and sophisticated investor. Musselman Dep. 36. In a securities case such as this, a plaintiff will often have to rely heavily on the abilities, advice, and experience of counsel, and this is perhaps why it appears to the defendants that plaintiffs' counsel, not plaintiffs, is the driving force behind this case.

Second, defendants maintain that there is a conflict of interest created by the pervasive role that Patterson Belknap played in this litigation and in the events preceding the vote of the ERP limited partners on December 20, 1989. In support of their position, defendants cite the case of *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1093 (3d Cir.), *cert. denied, Arthur Anderson & Co. v. Kramer*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976), where the Court of Appeals for the Third Circuit held that a motion for disqualification of an attorney acting as class counsel should be granted where even an appearance of improper conflict of interest exists because the close relationship of the putative class representatives and the putative class attorney.

In that case the issue was whether a member of the bar who is a plaintiff class representative in a class action proceeding pursuant to Fed.R.Civ.P. 23(b)(3) can designate his counsel a member or employee of his law firm. The rule that evolved from that case was that "no member of the bar either maintaining an employment relationship, including a partnership or professional corporation, or sharing office or suite space with an attorney class representative during the preparation or pendency of a Rule 23(b)(3) class action may serve as counsel to the class if the action might

result in the creation of a fund from which an attorneys' fee award would be appropriate." *Id.*

As can be clearly seen, that case is distinguishable because of the close professional relationship (same law firm) between the class representative and the class attorney. *See also Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir.1977) (affirming denial of class certification where in one case, one plaintiff and one of plaintiffs' attorneys were members of the same law firm, and in the other case, one plaintiff and one of plaintiff's attorneys were brothers); *Fechter v. HMW Industries*, 117 F.R.D. 362 (E.D.Pa.1987) (denying class certification where plaintiffs' counsel was a member of the class). There is no such close professional or familial relationship present in this case.

Third, defendants claim that there is a conflict of interest because they expect Mr. Dobbins (and perhaps other members of the Patterson Belknap firm) to be a trial witness to testify as to his representation of the class before the December 20, 1989 vote, his communications with the class, and his knowledge of the allegedly concealed facts. If this occurs, defendants maintain, Mr. Dobbins and Patterson Belknap would have to be disqualified. Plaintiffs counter that it is unlikely that Mr. Dobbins will be called as a witness at all.

Even if circumstances arise where Mr. Dobbins is, for some reason, disqualified as counsel for the class, Mr. Friedman will still be able to represent the class.

We conclude that the requirement of fair and adequate representation is satisfied.

## B. Rule 23(b)(3)

Rule 23(b)(3) provides in pertinent part: [a]n action may be maintained as a class action if ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the

fair and efficient adjudication of the controversy.

.  .  .  .  .

### 5. Predominance

■ The court must determine that common questions of law or fact pertaining to the class predominate over individual questions. Fed.R.Civ.P. 23(b)(3). It is not, however, essential that common questions of law or fact be identical. *Safran v. United Steelworkers of America*, 132 F.R.D. 397, 401 (W.D.Pa.1989) (Cohill, C.J.).

■ Plaintiffs reiterate their argument that the predominant issues relate to whether the proxy statement contained false and misleading statements and whether defendants breached their fiduciary duties, committed common law and securities fraud, and entered into a criminal conspiracy. As to the securities claims and the claims of common law fraud, defendants strenuously argue that there is an individual issue which predominates: reliance. Defendants argue that the purported reliance by each class member on the allegedly material omissions and misrepresentations on the proxy statement will have to be proven as to each class member.

We disagree with the defendants. Regardless of whether reliance will have to be proved at trial, this issue goes to the merits of the action and as such is an improper consideration in a motion for class action certification. In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), the Supreme Court stated that there is nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. *See also In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 139 (D.N.J.1984) ("even if, as defendants assert, they can prove non-reliance as an affirmative defense, this goes to the merits of the case and cannot be considered by the court on a certification motion"), *rev'd on other grounds*, 843 F.2d 1537 (3d Cir.1988).

We therefore conclude that the common questions of law and fact pertaining to the class predominate over individual questions.

### 6. Superiority

Additionally, the court must determine that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R. Civ.P. 23(b)(3). In determining superiority, the court must consider several factors: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

Plaintiffs argue that given the size of the class harmed by defendants' actions and the nature of the class members' injuries, there is no viable alternative to a class action. Without class certification, the class members would be required to bring individual suits in order to gain redress, and this would be neither fair nor efficient.

We agree with the plaintiffs. As defendants point out, the class members suffered sufficient losses to justify bringing individual law suits since the *minimum* investment in ERP was $50,000. *See, e.g., Gilbert v. Woods Marketing, Inc.*, 454 F.Supp. 745, 750 (D.Minn.1978) (claims ranged from $2,000 to $15,000 were substantial). But this is not our only consideration. Class actions are a particularly appropriate and desirable means to resolve claims based on securities laws violations. *Eisenberg v. Gagnon*, 766 F.2d at 785. Requiring the class members to bring separate law suits would waste judicial resources, limit judicial access to the courts, and create a problem of inconsistent judgments. Thus, we conclude that this litigation should be concentrated in one forum. Since it is desirable to have this litigation in one forum, we hold that a class action will be superior to other available methods for the fair and efficient adjudication of this controversy.

### Conclusion

We hold that plaintiffs have met the test for class certification pursuant to Fed.R. Civ.P. 23(a) and (b)(3). Therefore, we will grant plaintiffs' motion for class certification.

Since we have granted plaintiffs' motion for class certification, when we later refer to "plaintiffs" in this opinion, the reference will include the class representatives as well as the entire class.

### MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears by a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987).

### Securities Claims

In order to establish a violation of § 10(b), plaintiff must prove that the defendant: (1) made misstatements or omissions; (2) of material fact; (3) with scienter; (4) in connection with the purchase or sale of a security; (5) upon which plaintiffs relied; and (6) that reliance proximately caused plaintiffs' injuries. *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1244 (3d Cir.1989).

Under § 14(e), in order to establish a violation, the plaintiffs must prove: (1) a misleading statement or omission was made in connection with a tender offer; (2) the misstatement or omission was material; (3) the defendants knew or should have known of the duty to disclose or that the statement was misleading; and (4) that the misstatement or omission caused plaintiffs' injuries. *Koppers Co. v. American Express Co.*, 689 F.Supp. 1371, 1384 (W.D.Pa. 1988) (Cohill, C.J.).

**1080**

In their amended complaint, plaintiffs assert that the defendants made various material misstatements or omissions in the proxy statement. The proxy statement stated that Emerson had concluded that the $10 million price of the buyout was fair to the limited partners. Plaintiffs claim this was misleading because Emerson's Board of Directors authorized Mr. Faught to extend an offer of $12 million to ERP and the limited partners for the TWACS technology and related assets held by ERP. Amended Complaint ¶ 67 ("Am. Complaint ¶ ____"). The proxy statement also stated that Emerson believed the purchase price reasonably approximated the amount that would be payable to the limited partners under the Stock Option. Plaintiffs assert that this was false because defendants knew that the Revenue Payment Option would yield a substantially higher value for the limited partnership interests and that the amount that would be payable under the Stock Payment Option did not truly reflect the true value of ERP's assets. Am. Complaint ¶ 68. The proxy statement represented that the buyout offer was fair in light of the unsuccessful effort to sell the TWACS business. This was false and misleading, plaintiffs claim because defendants never disclosed the facts that they had made no reasonable attempts to obtain an accurate appraisal or to sell the business for an amount that represented the fair market value of the TWACS technology. Am. Complaint ¶ 69. The proxy statement reported the supposedly bleak financial prospects of ERP and the joint venture. Plaintiffs assert this was false because Emerson and LMDC failed to disclose that the TWACS technology was on the verge of becoming highly profitable. Am. Complaint ¶ 70. Finally, the proxy statement failed to disclose the conflict of interest among the defendants, and plaintiffs claim this was misleading because Mr. Faught was LMDC's President and Emerson's Senior Vice President–Technology. Plaintiffs also maintain that Emerson directed Mr. Faught to negotiate the buyout with himself, both as an officer of Emerson and as President of LMDC. Am. Complaint ¶ 83.

Plaintiffs assert that defendants knowingly made these misstatements or omissions because they wanted to buy out the limited partners before ERP began to generate profits and before ERP's true value became known to the limited partners. Am. Complaint ¶ 86. Further, plaintiffs allege that they were forced to sell their limited partnership interest in ERP by virtue of the fact that a majority of the plaintiffs consented to the buy out in reliance on the false and misleading statements and failure to disclose material facts by defendants. Am. Complaint ¶ 98. Finally, plaintiffs claim that the value they received for their limited partnership interests in ERP is much less than if the material facts had been disclosed. Am. Complaint ¶ 99.

In addition, relating to the § 14(e) claim, plaintiffs assert that the simultaneous solicitation of all the owners of units of limited partnership interests designed to procure consent to the buyout constituted a tender offer in that it satisfied all of the relevant factors used in determining whether a solicitation constitutes a tender offer. Am. Complaint ¶ 104.

Defendants set forth substantive arguments pertaining to deficiencies in several of plaintiffs securities law allegations. First, defendants argue that certain allegedly undisclosed information, including the estimates relating to the Revenue Payment Option and the projection value of the TWACS system, is not material. "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (footnote omitted). In *Basic Inc. v. Levinson*, 485 U.S. 224, 226, 108 S.Ct. 978, 980, 99 L.Ed.2d 194 (1988), the Supreme Court applied the *TSC Industries* standard of materiality to a cause of action under § 10(b) and Rule 10b–5.

Relating to the Revenue Payment Option, defendants claim that this information is not material because the decision whether to exercise the option rested wholly with Emerson, and not with the limited partners, and when an option may be exercised solely by a company, the company's future plans are immaterial.

Defendants cite the case of *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040 (8th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978), in support of their argument. In that case, however, Merrill Lynch was granted the option to purchase the holder's stock upon the occurrence of several specified instances, including the death of the holder. *Id.* at 1043. The court held that the death of the holder was merely a contingency and concluded that the causation element to the Section 10(b) and Rule 10b–5 claims was not satisfied. *Id.* at 1053. The court distinguished the situation, like the case at issue, where an improper motive is alleged. *Id.*

Pertaining to the projected value of the TWACS system, defendants assert that the information is not material because it is "soft" information. In support of their position, defendants rely on *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628 (3d Cir.1989). "Soft information refers to statements of subjective analysis or extrapolation, such as opinions, motives, and intentions, or forward looking statements, such a projections, estimates, and forecasts." *Id.* at 642 (citation omitted). Generally, the SEC encourages the disclosure of management's projections so long as the projections have a reasonable basis, are presented in an appropriate format, and are accompanied by disclosures that facilitate investor understanding. *Id.*

In *Flynn v. Bass Bros. Enterprises, Inc.*, 744 F.2d 978 (3d Cir.1984), the Court of Appeals for the Third Circuit held that soft information is not immaterial as a matter of law, and courts should ascertain the duty to disclose on a case-by-case basis, weighing the potential aid such information will give a shareholder against the potential harm, such as undue reliance, if the information is released with a proper cautionary note. *Id.* at 988. The court then listed seven factors that should be considered in evaluating the omitted information: 1) the facts upon which the information is based; 2) the qualifications of those who prepared or compiled it; 3) the purpose for which the information was originally intended; 4) its relevance to the stockholders' impending decision; 5) the degree of subjectivity or bias reflected in its preparation; 6) the degree to which the information is unique; 7) and the availability to the investor of other more reliable sources of information. *Id.*

In this case, the proxy statement reported the supposedly bleak financial prospects of ERP and the joint venture, and plaintiffs assert this was false because Emerson and LMDC failed to disclose that the TWACS technology was on the verge of becoming highly profitable. Am. Complaint ¶ 70. Plaintiffs argue that Emerson and LMDC had calculated that the sales of TWACS system would escalate dramatically, resulting in an operating profit of approximately $1,400,000 in 1989 and $3,700,000 in 1990. Am. Complaint ¶ 70. Plaintiffs further argue that these projections were based on reliable sources of information used by defendants in the regular course of business; were prepared by qualified persons; were relevant to whether the buyout offer was fair or should be rejected; and were not subjective or biased. Am. Complaint ¶ 70.

We hold that the information pertaining to the Revenue Payment Option and the projected value of the TWACS system is material because the limited partners would have considered it important in deciding how to vote.

Defendants last argument is that plaintiffs' complaint contains allegations of mismanagement and breach of fiduciary duty, not federal securities law claims. We do not disagree with the defendants that Congress, in enacting § 10(b), did not seek to regulate transactions which constitute no more than corporate mismanagement. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51

L.Ed.2d 480 (1977). And we agree with the defendants that in legislating § 10(b), Congress did not mean to prohibit any conduct not involving deception, misrepresentation, or nondisclosure. *Id.* at 476, 97 S.Ct. at 1302. But we do not agree that "plaintiffs have attempted to clothe their state law claims of corporate mismanagement and breach of fiduciary duty with the surface appearance of allegations of misrepresentations or nondisclosure." Defendants' Memorandum in Support of their Motion to Dismiss Plaintiffs' Amended Complaint p. 12.

On a motion under Fed.R.Civ.P. 12(b)(6), the court's inquiry essentially is limited to the content of the complaint, *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978), and dismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim. 5A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 (2d ed. 1990); *Richardson v. Pennsylvania Dept. of Health,* 561 F.2d 489, 492 (3d Cir.1977). In accepting the reasonable inferences drawn from the facts alleged in the complaint, we rule that plaintiffs have satisfied the pleading requirements for a cause of action based on §§ 10(b) and 14(e) and Rule 10b–5. Therefore, defendants' motion to dismiss the securities claims will be denied.

*RICO Claims*

■ In order to establish a RICO violation, plaintiffs must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). To prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity. *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, ——, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195, 208 (1989).

■ Continuity ·refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* 492 U.S. at ——, 109 S.Ct. at 2902, 106 L.Ed.2d at 209. A party alleging a viola-

tion of RICO may demonstrate continuity over a closed period by providing a series of related predicates extending over a substantial period of time. *Id.* "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.*

■ In this case, plaintiffs allege that the defendants repeatedly committed mail fraud and wire fraud. Am. Complaint ¶ 114. Between September and December of 1988, Morgan Guaranty contacted over 40 potential purchasers via interstate telecommunications and through the United States mails in regard to buying the TWACS system. Am. Complaint ¶ 50. Morgan also circulated a descriptive memorandum of the TWACS system to these potential purchasers through the United States mails, and this statement, plaintiffs allege, contained incomplete financial information with respect to the TWACS system. Am. Complaint ¶ 50. The unsuccessful attempt to sell ERP was described in a quarter financial report of ERP and an accompanying letter that was sent to all limited partners via the United States mails in June of 1989. Am. Complaint ¶ 51. On November 13, 1989, the defendants sent, through the United States mails, a proxy statement containing the proposal by Emerson to purchase all of the assets of ERP for $10 million. Am. Complaint ¶¶ 44, 53. Plaintiffs assert that the proxy statement contained material misstatements and nondisclosures. Am. Complaint ¶ 44. The proxy statement contained an accompanying letter that stated that due to conflicts of interest, the Board of Directors of LMDC was unable to make any recommendation to the limited partners relating to Emerson's offer to purchase the assets of ERP for $10 million. Am. Complaint ¶ 85. The plaintiffs assert that this disclosure was inadequate. Amended Complaint, ¶ 85. Plaintiffs use these instances as examples and further assert that defendants repeatedly committed securities fraud. Am. Complaint ¶ 115. From this plaintiffs conclude that such violations constituted

"racketeering activity." Am. Complaint ¶ 116.

Defendants' motion to dismiss the RICO claims will be granted because plaintiffs have not satisfied the pleading requirements for a RICO violation with respect to the "continuity" element. At the most, the predicate acts occurred over a period of four months, assuming that Morgan Guarantee was a part of the scheme; at the least, approximately six weeks. As we stated above, predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement. *H.J., Inc.*, 492 U.S. at ——, 109 S.Ct. at 2902, 106 L.Ed.2d at 209. Furthermore, the predicate acts relate to Emerson's purchase of the assets of ERP for $10 million, thus, there is no indication of future criminal activity posing a threat to society.

### Pendent Claims

Since we have denied defendants' motion to dismiss the securities claim, we will deny defendants' motion to dismiss the pendent state law claims, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and we will address defendants' motion for partial summary judgment on the securities claim.

## PARTIAL SUMMARY JUDGMENT

██ Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When confronted with a motion for summary judgment, it is not the court's function to weigh the evidence and determine the truth of the matter, but it is the court's job to decide whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party has the burden to identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party then must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

Defendants argue that they are entitled to summary judgment on the securities claims for two primary reasons. First, they assert that prior to the securities transaction on which plaintiffs base their securities claim, they disclosed to plaintiff's agents, Jeff Feuer, plaintiffs' financial advisor and J. Nelson Happy, an attorney of Patterson Belknap, every fact allegedly omitted or misrepresented. Second, they maintain that such disclosures establish the absence of scienter.

Plaintiffs argue, to the contrary, that plaintiffs did not have full knowledge of the undisclosed information.

As can be clearly seen, the disagreement over whether plaintiffs knew the information allegedly not disclosed to them before the vote on December 22, 1989 raises a factual dispute which precludes summary judgment from being granted. Therefore, defendants' motion for partial summary judgment on the securities claim will be denied.

An appropriate order will issue.

## ORDER

AND NOW, to-wit, this 15th day of January, 1991, for the reasons stated in the foregoing opinion, it is ORDERED, ADJUDGED, and DECREED that:

1. Plaintiffs' Motion for Class Certification pursuant to Fed.R.Civ.P. 23(b)(3) be and hereby is GRANTED;

2. Plaintiffs Hoffman Electric, Inc., Lawrence R. Musselman and Georgiana R. Musselman, as Co–Trustees of the Lawrence R. Musselman and Georgiana R. Musselman Trust, and Walter Winius, Jr., be and hereby are CERTIFIED to sue as the representative plaintiffs on behalf of all persons who, on or about December 20, 1990, redeemed or sold limited partnership interests in Emerson Research Partners L.P.;

3. The law firms of Patterson, Belknap, Webb & Tyler and Ambrose & Friedman be and hereby are DESIGNATED as counsel for the class;

4. The plaintiff class representatives shall give the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, pursuant to Fed.R.Civ.P. 23(c)(2);

5. Defendants' motion to dismiss be and hereby is DENIED as to the securities claim and pendent claim, but be and hereby is GRANTED as to the RICO claims;

6. Defendants' motion for partial summary judgment be and hereby is DENIED as to the securities claim.