**HOFFMAN ELECTRIC, INC., et al., Plaintiffs,**

v.

**EMERSON ELECTRIC CO., et al., Defendants.**

**Civ. A. No. 90–72 Erie.**

United States District Court, W.D. Pennsylvania.

June 26, 1992.

---

David F. Dobbins, Patterson, Belknap, Webb & Tyler, New York City, Edwin L. Klett, Klett Lieber Rooney & Schorling, Pittsburgh, Pa., for defendants.

John Michael Clear, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., J. Tomlinson Fort, Joseph C. Bartolacci, Pittsburgh, Pa., for plaintiff/Hoffman Elec.

## OPINION

COHILL, Chief Judge.

In the past few months the parties to this action have met with this Court several times in an effort to resolve their disputes and to pursue settlement of this action. The defendants have proposed a settlement of this action that involves the resolution of the class members tax dispute with the Internal Revenue Service ("IRS"). The unique nature of the proposed settlement, time pressures by the IRS and a petition by one member of the class to have class counsel replaced have combined to force this Court to become involved in the settlement discussions, to a greater degree than usual, in order to protect the interests of the class.

At a conference concerning these matters on June 8, 1992, the defendants and one of the representative plaintiffs through their counsel, who was proposed replacement counsel, requested that this Court preliminarily approve the proposed settlement, allow the defendant to notify the class of this Court's approval and then set a class-action settlement hearing.

In addition to these requests, the law firm of Reed, Smith, Shaw & McClay ("Reed Smith") has petitioned to intervene and act as class counsel for purposes of settlement. Reed Smith states that its client, Hoffman Electric, a representative plaintiff, wishes to accept the settlement offer. Given that the current class counsel does not consider this offer acceptable, Hoffman has moved, through Reed Smith, to have Reed Smith act as class counsel. Also, current class counsel, Patterson, Belknap, Webb and Tyler, has filed a motion to compel the defendants to accept the IRS settlement offer and also pay the class

Philip B. Friedman, Ambrose & Friedman, Erie, Pa., for plaintiffs/class.

members' liability to the IRS under that settlement.

Given the number of issues raised by the parties and the deadline set by the IRS for acceptance of this offer, we placed the parties on an expedited briefing schedule. As a result, the parties have filed with this Court numerous briefs and voluminous appendices to those briefs. We feel that the information presented to us has been sufficient to allow us to make a preliminary determination as to the reasonableness of the settlement without oral argument.

In addition, we feel that we must also dispose of Reed Smith's motion to intervene as class counsel and current class counsel's "Motion to Force Emerson to Finance IRS Settlement." We will discuss each of these issues separately below.

*Facts*

The plaintiffs were limited partners in Emerson Research Partners ("ERP I"), which was formed to develop, manufacture and market a two-way automatic communication system (TWACS). TWACS was to be used by electric utilities companies to reduce peaks in demand for electrical power through remote control. After years of losses, Emerson offered to purchase ERP I for an amount approximately half of the limited partners' initial investment. This offer was contained in a proxy statement. Plaintiffs then brought this lawsuit alleging that the defendant had entered into a scheme to buyout ERP I at an unfairly low price.

The defendants are Load Management Development Corporation ("LMDC"), as general partner of ERP I, Harold F. Faught, owner of LMDC and Emerson Electric Company.

In our previous opinion in this case, *Hoffman Electric, Inc. v. Emerson Electric, Co.,* 754 F.Supp. 1070 (W.D.Pa.1991), we granted plaintiff's motion for class certification and granted defendants' motion to dismiss the RICO claim. We denied defendants' motion for partial summary judgment on the securities claim. Thus, the remaining counts involve a securities claim and pendent state claims. The plaintiffs have also filed a motion to amend their complaint which we decline to address in this Opinion.

*Fairness of the Proposed Settlement*

We find, preliminarily, that the settlement proposed by the defendants is adequate, fair and reasonable. Thus, we will order that the class be notified of the proposed settlement, this Court's view of that settlement and that a settlement hearing has been scheduled. We will also direct that the class members must express their opinion on this settlement by submitting their vote via ballot to be enclosed with the notice no later than 4:00 p.m. July 6, 1992. The ballot should be sent to the tax matters partner, Mr. Brian Cave, with copies to all counsel of record. If a majority of the class accepts the settlement, and if, after the full hearing, we continue to believe that this is an adequate settlement, this Court will approve the settlement.

■ We believe that the settlement offer is fair for two reasons;

1. First, after review of the submissions of the parties on this matter, we find that, should this case proceed to trial, the plaintiffs would have difficulty proving damages exceeding $2 million. Even assuming that the proxy statement representing the defendants' offer to buyout the plaintiffs' interest somehow misleading, the technology on which the partnership was based has done nothing but lose money since the buyout.

Since the date of the buyout one of the only two customers using the system no longer does. In addition, none of the other prospective customers identified by the plaintiffs have purchased the technology. As a matter of fact, Emerson spun off the TWACS business to its shareholders as part of another deal at no additional charge.

The only hard evidence the plaintiff's have uncovered supporting their allegation that the price offered for the limited partners' interest in ERP I was too low is that Emerson's board authorized it to pay $12 million to the ERP I limited partners. While we cannot determine whether this authorization required Emerson to pay the

full $12 million to the class, we can consider the $12 million figure as an estimate of the worth of the company.

Emerson purchased the interest of the ERP I limited partners for $10 million. The board had authorized them to pay up to $12 million. Thus, the plaintiffs could use this difference between the price and the board authorization as proof that the allegedly misleading proxy statement resulted in $2 million in damages. But, given the decline in the business after the buyout, we do not believe that the plaintiffs will be able to prove any additional damages. The value of the settlement proposed by the defendants is $2 million. Thus, the amount of the settlement, in this Court's opinion, reasonably reflects the dollar value of this case.

2. Our second reason for preliminarily approving the settlement is its structure. At the time of Emerson's buyout of the ERP I limited partners, the IRS was investigating the deductions taken by the limited partners for the years 1984–1986. As part of the buyout, LMDC agreed to continue to fund the services of the Davis, Polk and Wardwell law firm to represent the limited partners in this matter. Also, under the buyout, LMDC continued to act as the Tax Matters Partner for the limited partners even after ERP I was dissolved.

Emerson, through Davis Polk and Wardwell, has negotiated a settlement of these IRS claims. The settlement involves other entities aside from ERP I. Under the settlement, the IRS has agreed to assess against LMDC $2.5 million in tax liability. This liability represents the liability of ERP I and ERP II to the IRS for certain disallowed deductions taken by the limited partners of these separate research partnerships. Emerson has estimated that 70% of the total liability is allocable to ERP I. Thus, $1.75 million of the total $2.5 million represents the liability of the ERP I limited partners. Class counsel disputes this calculation. However, we can find no fault with the defendants' figures.

This $1.75 million would satisfy what the IRS and Davis, Polk and Wardwell agree is the ERP I limited partners estimated $6,117,587 tax liability. According to the calculations presented by the defendants, the estimated tax liability for each partnership share is $30,900. The settlement allows the parties to satisfy that liability at the reduced price of $8,800 per share. In addition to this benefit, the liability will be assessed against LMDC, not the individual limited partners. Thus, these individuals will not have to file amended tax returns for the years 1984–1986. Also, the IRS has stated that if LMDC pays this liability for the limited partners, it will not consider this monetary benefit to the partners as taxable income. As a result, $1.75 million of this settlement will not be taxable to the members of the class.

The administrative convenience of this method of resolving this tax dispute weighs heavily in favor of accepting the settlement. In addition, the value of the settlement parallels this Court's opinion as to the value of the plaintiffs' claims, assuming that the claims themselves have merit. While we decline to make any suggestion as to the merits of these claims, we do suspect that the plaintiffs may find it difficult to prevail should this case proceed to trial. However, we are not firmly convinced that the $2 million settlement offer is perfect as it stands.

Emerson has agreed to sweeten the pot with $250,000 in cash, in addition to paying the limited partners' tax liability in order to settle this case. Class counsel feels that this additional cash is not sufficient. We agree with class counsel that this $250,000 may not cover the expenses to class counsel during the pendency of this action. Thus, we believe that a settlement involving the payment of the IRS liability under the proposed settlement and additional cash for a total value of between $2 million and $2.2 million would be an adequate settlement.

Because of this determination we will draft a notice to the class to be sent by the defendants that states that we feel that a settlement offer of the $1.75 million in liability paid to the IRS plus and additional $250,000—$450,000 in cash is reasonable. While, none of the parties may completely

agree with this position, it is the opinion of the Court that a settlement of a total value of between $2 million and $2.2 million is reasonable and should be communicated to the class.

We hasten to add that we have only expressed our views on the proposed settlement as the rationale for authorizing the vote by the class members. Our views are, of course, in no way binding on the class.

For the reasons stated above we will grant preliminary approval to this settlement offer. However, final approval of the settlement will depend on the response of the class and the evidence presented at the settlement hearing.

*Adequacy of Notice*

■ We also find that the attached notice, if sent via facsimile or overnight mail, by the defendants at the defendants' expense will satisfy Federal Rule of Civil Procedure 23(e). This Court must evaluate 5 factors to determine whether notice to a class of a settlement hearing is sufficient; 1) the notice period; 2) the mechanism of the notice; 3) prior communications with the class regarding the proposed settlement; 4) the characteristics of the class; and 5) the contents of the notice.

■ As to the first factor, notice period, we find that, if the notice is sent to the class the day this Opinion and Order are signed, June 26, 1992, the class will have been given sufficient notice to allow a settlement hearing to be held on July 8, 1992. The rush inherent in this process comes from pressure by the IRS. The IRS has agreed, according to the plaintiff's brief, to hold its settlement offer open until July 10, 1992. Thus, the settlement hearing must be held prior to July 10th. We find that this period is sufficient given recent communications with the class regarding settlement. Thus, this notice will not come as a complete surprise.

The second factor, mechanics of the notice, also weighs in favor of the adequacy of the notice. The defendants have agreed to convey this notice to the class via overnight mail. Thus, should the notice be sent today, all the class members will receive notice by Monday, June 29, 1992 at the latest. We will also order the defendants to send the notice via facsimile, in addition to the overnight mail, to those class members with facsimile machines. The defendants informed the Court at the most recent status conference that many of the class members have facsimile machines. Thus, every attempt will be made to get notice to the class members today.

The third factor, prior communications with the class, also supports this notice. The class members have been aware of the dispute with the IRS since September 20, 1988. In addition, the class members received notices from the defendants and class counsel regarding this settlement offer in May 1992. Class counsel included a ballot in their notice which approximately 75 of the 198 class members have returned. Thus, the class members have already received notice of the proposed settlement and many have expressed an opinion on that settlement. The class is aware of the current negotiations, so this notice of the settlement hearing will not come as a complete surprise.

The characteristics of the class, also work in favor of the sufficiency of this notice. To invest in ERP I each of the limited partners had to have a net worth of at least $1 million. Thus, the court can infer that the class members are sophisticated investors. Many of the class members are lawyers or have their own investment advisors. Thus, the class members should be able to seek advice or reach their own determination of the reasonableness of the settlement by the hearing date of July 8, 1992.

We also find that this notice is quite complete. The settlement is described in sufficient detail to appraise the parties of the benefits and detriments of the settlement. In addition, it contains this Court's opinion of the reasonableness of the settlement. Thus, the notice fairly apprises the class members of the nature of the settlement and the ballot allows them to express their opinion as to settlement prior to the settlement hearing.

**1284**

After considering all of the above factors, we find that the attached notice to be sent to the class members, is sufficient to satisfy the class members due process rights and the requirements of Federal Rule of Civil Procedure 23(e).

*Plaintiffs' Motion to Order Emerson to Finance the IRS Settlement*

In this motion, the plaintiffs assert that Emerson, by stating that it will stop funding the class' representation in the IRS dispute if the class does not accept this settlement offer has breached its fiduciary duty to the class. Because of this threat, class counsel argues that the defendants should be forced to accept and pay the IRS settlement. We find no merit to this motion.

In the proxy statement, LMDC agreed that it would

"continue contesting the IRS dispute until a resolution is reached which the General Partner believes is reasonable to accept (taking into account the estimated net tax consequences to the Limited Partners, the costs of continuing the IRS Dispute and other relevant factors.) ...

... A limited partner who elects not to be bound by a settlement entered into by the General Partner will thereafter bear the responsibility individually (or together with other non-electing Limited Partners) to conduct and bear the expense of any continued dispute.

Thus, under the contractual obligations contained in the proxy statement, LMDC only assumed the responsibility to represent the limited partners and negotiate a settlement with the IRS. We cannot find anything in this agreement or the relevant IRS regulations that require the Tax Matters General Partner in these situations to finance the tax liability of the limited partners.

██ The plaintiffs argue that, by threatening to stop paying the limited partners' legal fees in this tax dispute if the class members do not accept this settlement offer, LMDC is violating its fiduciary duty to these partners. We do not find that any sort of duty aside from a pure contractual duty exists between these parties. ERP I

no longer exists. Thus, LMDC cannot be deemed to have any sort of fiduciary duty as General Partner to this class of former limited partners.

LMDC is a tax matters general partner in name only. Under IRS regulations and the federal income tax code, in situations when tax disputes exist at the time a limited partnership is dissolved, the parties must name someone as a tax matters general partner. This general partner's only obligation is to represent the limited partners in the negotiations surrounding the tax dispute. The agreement in the proxy statement setting forth the nature of LMDC's duty to negotiate the settlement with the IRS is consistent with these requirements. We agree with the defendants that this requirement is one of administrative convenience.

Thus, the only duty that LMDC owed to the former ERP I limited partners is to negotiate the best possible settlement to the dispute. This obligation does not require Emerson to fund the resolution of the dispute. However, whether this is the best possible resolution to the dispute is another matter.

We agree that if the limited partners can satisfy their tax liability for $8,800 per share, then the LMDC has negotiated a reasonable and adequate resolution of this matter. However, the limited partners have not been given the option to pay the amount they owe directly to LMDC in order to fund the settlement. Instead, LMDC has only given the limited partners one option—accept this settlement of the securities claim or pay for your own attorney to represent you with the IRS.

We will not make any determination as to whether the solution as currently negotiated with the IRS is "reasonable to accept" without being offered to the limited partners independent of any settlement offer in this litigation. Any finding at this time regarding this matter would be premature in light of the pending settlement offer and the fact that this Court may not have all the information it needs to make such a finding. However, we feel that this aspect

of the case is something the defendants should consider while calculating the final amount of their settlement offer.

However, we do find that the plaintiff's motion to force the defendants to accept and finance the IRS settlement has no merit. Emerson has no obligation to pay the limited partners' liability—they must only negotiate a reasonable resolution to the dispute. Thus, we will deny the plaintiffs' Motion to Force Emerson to Finance the IRS dispute.

*Petition to Permit Hoffman Electric, Inc., A Class Representative, to Engage Reed, Smith, Shaw & McClay As Counsel for the Purpose of Presenting Settlement*

■ Hoffman Electric, through Reed Smith, requests that Reed Smith be substituted for class counsel in order to pursue settlement on behalf of the class. We find that, allowing the substitution of counsel at this late date, will do nothing but increase the cost of this litigation. We find that current class counsel has diligently prosecuted this case on behalf of the class. To allow Reed Smith to intervene and negotiate a settlement when Reed Smith has admitted that it has not reviewed the case thoroughly would be ludicrous.

In addition, Reed Smith would be in a conflict of interest position with members of the class who do not agree with the proposal since Reed Smith's original client, Hoffman Electric, wants to accept the proposal.

Many settlement negotiations potentially compromise an attorney's claim to fees. Here, the conflict is acute. The settlement offer does not consist of a cash fund. Rather, the settlement eliminates tax liability incurred by the class and a limited amount of cash. While the settlement is beneficial to the class, it limits class counsel's ability to recover its fees from the fund generated by the litigation. In such a situation, the settlement offer is best communicated to the class by a neutral arbiter to cure a conflict that may arise between the class and its counsel.

Current class counsel filed this complaint, conducted discovery and has diligently prosecuted the class' claims. Until now, the class has not complained about its representation. We feel that the notice we will direct the defendants to serve on the class will cure any defect in current class counsel's pursuit of settlement. The notice states that this Court preliminarily approves the settlement, notifies the class of our opinion and sets a date for a settlement hearing. Thus, this notice conveys the defendant's settlement offer to the class through a neutral arbiter.

The notice also gives the class an opportunity to vote on the settlement. Should the class approve the settlement, then class counsel will have no choice but to accept the settlement or file a motion to withdraw as counsel. Thus, we will deny Reed Smith's petition to intervene as class counsel.

The defendants' brief in support of Reed Smith's petition to intervene argues that current class counsel should be disqualified. These arguments are very similar to those asserted in the defendants' opposition to the plaintiffs' motion for class certification. We rejected those arguments in an earlier opinion and see no reason to accept them now. *See, Hoffman Electric v. Emerson Electric*, 754 F.Supp. 1070, 1077 (W.D.Pa.1991).

*Conclusion*

In summary, our order will contain the following rulings:

1) We will grant preliminary approval to the class settlement pending a vote on the offer by the class and the outcome of a settlement hearing;

2) On the day this opinion and order are entered, we will direct the defendants to serve to the class the notice attached to this opinion as an appendix;

3) We will deny Plaintiff's Motion to Force Emerson to Finance the IRS Settlement; and

4) We will deny representative plaintiff, Hoffman Electric's Petition to Permit Hoffman Electric, Inc., A Class Representative, to Engage Reed, Smith, Shaw & McClay As Counsel for the Purpose of Presenting Settlement.

APPENDIX

NOTICE OF HEARING ON PROPOSED
SETTLEMENT

TO: ALL PERSONS OR ENTITIES
WHO OWNED CLASS A LIMITED
PARTNERSHIP INTERESTS IN EM-
ERSON RESEARCH PARTNERS,
L.P., ON OR ABOUT DECEMBER 20,
1989, EACH IN HIS, HER, OR ITS
INDIVIDUAL CAPACITY AND ALL
COLLECTIVE REPRESENTATIVES,
ASSIGNS, HEIRS, EXECUTORS, AD-
MINISTRATORS, CUSTODIANS,
PREDECESSORS OR SUCCESSORS
IN INTEREST AND ANY OTHER
PERSON HAVING ANY LEGAL OR
BENEFICIAL INTEREST IN THE
ABOVE-MENTIONED LIMITED
PARTNERSHIP INTERESTS

**SPECIAL NOTE**

PLEASE READ THIS NOTICE WITH
CARE AS IT AFFECTS YOUR RIGHTS
WITH RESPECT TO THIS CASE. THIS
NOTICE IS NOT AN EXPRESSION OF
ANY OPINION BY THIS COURT AS TO
THE MERITS OF ANY OF THE CLAIMS
OR DEFENSES ASSERTED BY ANY
PARTY IN THIS ACTION. THIS NO-
TICE IS SENT FOR THE PURPOSE OF
INFORMING YOU OF CERTAIN DETER-
MINATIONS BY THE COURT, THE PRO-
POSED SETTLEMENT OF THIS CASE,
AND ALTERNATIVE COURSES OF AC-
TION THAT YOU MAY TAKE.

This notice is given pursuant to Rule 23
of the Federal Rules of Civil Procedure and
pursuant to an order of the United States
District Court for the Western District of
Pennsylvania ("the Court").

I.

DESCRIPTION OF THE LITIGATION

This litigation was commenced by the
filing of a complaint in March of 1990,
which complaint was subsequently amend-
ed. The defendants are Emerson Electric
Co. ("Emerson"), its wholly-owned subsid-
iary Load Management Development Cor-
poration ("LMDC") and Harold F. Faught,

an Emerson employee (collectively the "De-
fendants").

On January 15, 1991, the Court deter-
mined that the action should proceed as a
class action, and on April 3, 1991 the Court
directed that a Notice of Pendency of Class
Action be sent. The Class certified by the
Court, as provided in the Notice of Penden-
cy, consists of all persons who owned Class
A limited partnership interests in Emerson
Research Partners, L.P. ("ERP I") at the
time ERP I's assets were purchased by
Emerson on or about December 20, 1989
(the "Buyout") except for the defendants
and their affiliates, officers of the defen-
dants, members of such officers' immediate
families, Oppenheimer & Co., and any em-
ployees of Oppenheimer & Co. who owned
Class B Limited Partnership interests. A
Notice of Pendency of Class Action was
sent to you on May 24, 1991, and all those
individuals that did not exclude themselves
became members of the Class.

Plaintiffs in this action generally allege
on behalf of the Class that the Buyout
constituted a fraud on the Class because
the Proxy statement by which Emerson
solicited consent to the Buyout allegedly
contained misrepresentations and omitted
material facts. The Amended Complaint
also alleges that the price at which ERP I's
assets were purchased in the Buyout was
unfairly low. The plaintiffs claim that the
defendants' actions caused the Class to be
damaged and that the conduct of the defen-
dants constituted violations of §§ 10(b) and
14(e) of the Securities Exchange Act of
1934 and common law fraud and breached
defendants' fiduciary duties. The class
counsel in this litigation currently have a
pending motion to amend the complaint to
allege additional breaches of fiduciary duty
in the conduct of ERP I's business before
the Buyout.

Each of the defendants denies the claims
of wrongdoing and denies any liability to
the plaintiffs or other members of the
Class. The defendants have also asserted
various defenses to the allegations of the
amended complaint. They generally con-
tend that substantial evidence supports the
conclusion that the Buyout price was fair

and not unduly low and that no material information was concealed from the limited partners. They base that defense in part on disclosures made to the firm of Patterson, Belknap, Webb & Tyler, designated class counsel in this case. Moreover, even if the plaintiffs win the class issues, defendants contend that each member of the Class may have to participate in a hearing on the issues of (1) whether he or she relied on the proxy statement that is the subject of this action and (2) whether he or she knew or reasonably should have known of the alleged fraud before the Buyout. If this occurs, each class member might be required to attend a deposition and travel to Erie, Pennsylvania, for the hearing.

## II.

### SUMMARY OF PROPOSED SETTLEMENT

The Proposed Settlement, which requires approval by the Court, is as follows:

A. Emerson will accept the following proposal from the IRS:

1. The IRS will discharge the limited partners' liabilities for the audited issues for all tax years, which liabilities Emerson has calculated would amount to approximately $6 million for the ERP I limited partners (approximately $30,900 per limited partnership unit). The IRS will close out all partnership tax years by accepting as originally filed the treatment of the ERP I tax issues on the individual federal income tax returns of the ERP I limited partners consistent with the K–1 forms and other instruction issued by ERP I. This resolution will resolve all tax matters—whether or not currently in dispute with the IRS—as to both ERP I and Emerson Research Partners II (a second unrelated partnership).

2. In lieu of any payment by the limited partners, the IRS will assess a deficiency of approximately $2.5 million (comprised of tax of $1,350,000 and interest to the date of closing) in respect of both ERP I and ERP II, against defendant LMDC (Emerson estimates that approximately $1,750,000 of this assessment is attributable to ERP I).

3. Emerson will pay this assessment, and/or satisfy it by setting off the favorable tax consequences of the IRS' proposal to settle an unrelated Emerson corporate tax matter involving a subject matter entirely unrelated to these partnerships.

4. Payment or satisfaction of this assessment by Emerson, under the IRS agreement, will not result in any additional tax liability to the limited partners.

B. Emerson will establish a Settlement Fund consisting of Two Hundred and Fifty Thousand Dollars ($250,000). The Settlement Fund will be distributed pursuant to order of the Court.

C. Class Counsel, Patterson, Belknap, Webb, and Tyler, will apply to the Court for an award of fees and expenses of litigation. The Settlement Fund will be reduced by such amounts as are disbursed to pay for the plaintiffs' counsel's fees and expenses.

D. Defendants' payment of the Settlement Fund and the payment and/or satisfaction of the IRS assessment shall be in full consideration for, among other things, dismissal with prejudice and without costs of all claims against the defendants in connection with the Emerson Research Partners, L.P., including without limitation claims under state and federal securities laws and common law theories of fraud or breach of fiduciary duty.

E. If the Court does not approve the settlement, or if it fails to become effective, then the rights and duties of the parties will revert to their respective statuses as of the date and time immediately prior to the date of the Notice.

### III.

### PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS TO CLASS MEMBERS

The Settlement, if finally approved by the Court and implemented, will satisfy the individual federal income tax liabilities of the class members in connection with ERP I without any additional payment or tax liability by the class members to the IRS. The settlement is not expected to provide

any cash distributions to members of the Class because it is expected that the Settlement Fund will be entirely consumed by the application to pay plaintiffs' counsel's fees and expenses. If there is any money left, there will be a payment to each member of the class, which will be calculated by dividing the face value of the limited partnership interest purchased by the class member by the face value of the total of all limited partnership interests purchased by the entire class and multiplying the resulting percentage by the amount of the Settlement Fund remaining after payment of the plaintiffs' counsel's fees and expenses.

## IV.

### THE POSITIONS OF THE COURT AND COUNSEL REGARDING SETTLEMENT

This notice is being sent to the class because the parties cannot agree on the reasonableness of the settlement. The defendants and their counsel believe that the proposed settlement is a fair and adequate resolution of the claims. However, counsel representing the class does not agree that the settlement is sufficient. Specifically, class counsel believes that more cash should be added to the settlement fund.

Given the disagreement of the parties on this issue, the Court was asked to make a preliminary determination of the fairness, adequacy and reasonableness of the proposed settlement. After reviewing the record of the case and the positions of both parties the Court has reached the preliminary conclusion that a settlement involving resolution of the limited partners' liability with the IRS financed by the defendants with an additional cash settlement fund of between $250,000 and $450,000 is a reasonable, fair and adequate resolution of the class member's claims.

This determination is not binding on any of the parties or the Court. Final Court approval of the settlement is determined by the wishes of the class and the outcome of the settlement hearing. The Class Members should bear in mind that the defendants have not agreed to increase their current settlement offer above the $250,-000 currently offered to be placed into the Settlement Fund.

## V.

### NOTICE OF SETTLEMENT HEARING AND RIGHT TO VOTE AND/OR OBJECT

A. The Court has ordered that a hearing (the "Settlement Hearing") be held before the Honorable Maurice B. Cohill, Jr. United States District Judge for the Western District of Pennsylvania, on July 8, 1992 at 9:30 a.m., in Courtroom B, United States Post Office and Courthouse, Erie, Pennsylvania to determine the fairness and reasonableness and adequacy of the proposed Settlement, and the application by Class counsel for fees and expenses.

B. Attached to this Notice is a ballot, the Class Members are requested to complete the ballot and mail it to Bryan Cave, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO 63102-2570. Also please send one copy of it to Class Counsel, David F. Dobbins, Patterson, Belknap, Webb and Tyler, 30 Rockefeller Plaza, New York, New York 10112. Another copy of the completed ballot should be sent to counsel for defendants, Edwin L. Klett, Klett Lieber Rooney & Shorling, 40th Floor, One Oxford Centre, Pittsburgh, Pennsylvania 15219-6498. THESE BALLOTS MUST BE RECEIVED BY AT THE ABOVE ADDRESSES NO LATER THAN 4:00 P.M. JULY 6, 1992.

C. If you are a Class Member you may appear personally or by counsel and be heard at the Settlement Hearing and object to, or express your views regarding the Settlement or the proposed application for fees, expenses and costs. No Class Member will be heard or entitled in any way to contest approval of the Settlement or any application for counsel fees **UNLESS ON OR BEFORE 4:00 P.M. JULY 6, 1992 SUCH PERSON FILES WITH THE CLERK OF THIS COURT SUCH PERSON'S OBJECTIONS OR COMMENTS IN WRITING, TOGETHER WITH ALL PAPERS TO BE SUBMITTED TO THIS COURT AT THE SETTLEMENT HEARING.** On or before that date and time, all

such papers must also be actually delivered to each of the following counsel for the parties: Class Counsel, David F. Dobbins, Patterson, Belknap, Webb and Tyler, 30 Rockefeller Plaza, New York, New York 10112 and counsel for defendants, Edwin L. Klett, Klett Lieber Rooney & Shorling, 40th Floor, One Oxford Centre, Pittsburgh, Pennsylvania 15219–6498.

## VI.

### INSPECTION OF PAPERS

This Notice is not an all-inclusive description of the Settlement. For further information concerning this action and the full details of the matters disclosed in this Notice, you may refer to the pleadings and other papers and records in this litigation filed with the Court, all of which may be inspected during regular office hours at the office of the clerk, United States District Court for the Western District of Pennsylvania, United States Post Office and Courthouse, Erie, Pennsylvania and office of the clerk, United States Post Office and Courthouse, Pittsburgh, Pennsylvania. You may, of course, seek advice and counsel of your own attorney if you so desire. All inquiries regarding the Settlement or the action should be addressed as follows:

ERP Securities Litigation
Patterson, Belknap, Webb and Tyler
30 Rockefeller Plaza
New York, NY 10112

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT.**

/s/ Catherine D. Martrano
Clerk, United States District Court
Western District of Pennsylvania

### BALLOT

Please indicate below with an "x" your decision regarding Emerson's offer to settle the IRS dispute. This ballot will to aid the Court in determining whether it should grant final approval to the settlement proposal. Please mail this ballot to Bryan Cave, One Metropolitan Square, 211 North Broadway, Suite 3600, St. Louis, MO 63102–2570, with a copy to each of the following attorneys; Class Counsel, David F. Dobbins, Patterson, Belknap, Webb and Tyler, 30 Rockefeller Plaza, New York, New York 10112 and another copy of the ballot should be sent to counsel for defendants, Edwin L. Klett, Klett Lieber Rooney & Shorling, 40th Floor, One Oxford Centre, Pittsburgh, Pennsylvania 15219–6498.

_____ I would accept a proposal to settle this dispute and the IRS dispute affecting ERP I for $1.75 million tax liability assessed against LMDC and including a cash Settlement Fund of between $250,000 and $450,000.

_____ I would *not* accept a proposal to settle this dispute and the IRS dispute affecting ERP I for $1.75 million tax liability assessed against LMDC and including a cash Settlement Fund of between $250,000 and $450,000.

_____
Signature and Date

_____
Print Name

_____

_____
Address