Norman MUELLER, et al., Plaintiffs,

v.

CBS, INC. f/k/a Westinghouse, Inc., Defendant.

No. 99–CV–1310.

United States District Court, W.D. Pennsylvania.

Jan. 31, 2001.

Gary F. Lynch, New Castle, Colleen E. Ramage, Ramage & Valles, John T. Tierney, David B. Rodes, Theodore Goldberg, Goldberg, Persky, Jennings & White, Edward A. Olds, for Norman Mueller, Harry Bellas, and Marian Oshinsky.

Lindsay S. Mork, Leven, Surloff, Smith & Cohen, Robert B. Smith, City of Pittsburgh Department of Law, Pittsburgh, Robert H. Kutz, Greensburg, for Saverio A. Pantano, Mark S. Wojcik, and Barbara Blanchfield.

Laura E. Ellsworth, Amy E. Dias, Jones, Day, Reavis & Pogue, Sheila M. Ford, Ford & Council, Pittsburgh, Glen D. Nager, Robert H. Klonoff, Andrew M. Kramer, Thomas M. Beck, Jones, Day, Reavis & Pogue, Washington, DC, James P. Hollihan, George M. Medved, David J. Kolesar, Henry W. Ewalt, Pepper Hamilton, Eric J. Sobczak, CBS Corporation, Pittsburgh, for CBS, Inc. fka Westinghouse, Inc., defendants.

Christopher K. Ramsey, Morgan, Lewis & Bockius, Pittsburgh, for Eric Lofgren and Charles Commander.

## OPINION and ORDER OF COURT

AMBROSE, District Judge.

Pending before this Court is a Motion by Plaintiffs for Class Certification [1] pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' Motion will be denied in its entirety.

## I. INTRODUCTION

### A. Factual and Procedural History

The facts and procedural history of this case are set out in detail in my Opinion and Order of Court dated January 3, 2001 (Docket No. 107), which addresses the question of conditional certification and notice for two

---

1. Also pending as part of the same docket item is Plaintiffs' Motion for Partial Summary Judgment on Count V of the Complaint (ERISA violations). Plaintiffs have also submitted a separate Motion for Partial Summary Judgment on the issue of liability under the Age Discrimination in Employment Act (Docket No. 85). Fed.R.Civ.P. 23(c) provides that "as soon as practicable after the commencement of an action, the court shall determine by order whether it is to be maintained.

An order under this subdivision may be conditional and may be altered or amended before the decision on the merits." In keeping with this Rule and with the view that it is better for a district court to dispose of a motion for class certification before ruling on the merits of the case (Mira v. Nuclear Measurements Corp., 107 F.3d 466, 475 (7th Cir.1997)), the motions for partial summary judgment will be addressed in a subsequent Opinion and Order.

subclasses of plaintiffs under the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 621 *et seq.* The claims addressed herein arise from the same facts, but relate to violations of the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001 *et seq.*, allegedly committed by Defendant CBS, Inc. ("CBS").[2] This Court has jurisdiction pursuant to 29 U.S.C. § 1132, empowering a participant in a benefit plan covered by ERISA to bring suit in the United States district courts to recover benefits due to him under the terms of that plan.

### B. *ERISA Claims*

The Second Amended Complaint ("Sec. Am. Compl.," Docket No. 19) presents four ERISA claims. Count II, brought under Section 510 of ERISA, 29 U.S.C. § 1140,[3] asserts that Plaintiff Norman Mueller, a participant in the Westinghouse Pension Plan (the "Plan"), was unlawfully terminated within five months of becoming entitled to a 100% vested pension under the Plan when CBS dismissed him to order to defeat his claim for full benefits. (Sec.Am.Compl., ¶¶ 18–20.)

Count IV asserts that CBS violated its fiduciary duty[4] under ERISA by advising Plaintiffs that they could not receive optional lump sum pension benefits unless they released certain claims against CBS as part of the severance process. This action, Plaintiffs claim, was careless, imprudent, for the benefit of CBS rather than in the interests of the participants, and unenforceable as a matter of law. Plaintiffs further assert that they were harmed because in reliance upon those misrepresentations, they delayed pursuing their lawful claims against CBS or failed to pursue such claims. (Sec.Am.Compl., ¶¶ 24–26.) This claim is brought under ERISA § 440(a), 29 U.S.C. § 1104(a).[5] (Brief in Support of Class Certification of an ERISA Class under § 1054 of ERISA and § 510 of ERISA, Docket No. 88, "Plfs.' Brief," at 6.)

Count V asserts that Plaintiff Marian Oshinsky and other participants in the Plan who elected to take the lump sum option upon their retirement incurred a "dramatic reduction" of benefit accruals because a 1994 amendment to the Plan froze accrued benefits as of December 31, 1994. The post-amendment formula used to calculate the actuarial present value of the lump sum allegedly reduced the participants' pension benefits already accrued on the date of the amendment and/or eliminated a benefit, thus violating ERISA § 204(g), 29 U.S.C. § 1054(g).[6] Second, the same amendment

---

**2.** CBS is the successor-by-name-change of Westinghouse Electric Corporation, the actual employer of Mueller, Bellas and Oshinsky.

**3.** ERISA § 510 provides in pertinent part:

It shall be unlawful for any person to discharge ... a participant ... for exercising any right to which he is entitled under the provisions of an employee benefit plan... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.
29 U.S.C. § 1140.

**4.** Plaintiffs assert that CBS acted as a fiduciary with respect to the Pension Plan because it exercised joint authority and control and disposition of Plan assets. (Sec.Am.Compl., ¶ 24.)

**5.** ERISA § 440(a) provides in pertinent part:
(a) Prudent man standard of care.
(1) Subject to sections 403(c) and (d), 4042, and 4044 ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and
　(A) for the exclusive purpose of: (i) providing benefits to participants and their benefi-

ciaries; and (ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.
29 U.S.C. § 1104(a).

**6.** ERISA § 204(g) provides in pertinent part:

Decrease of accrued benefits through amendment of plan.
(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

violated ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3),[7] by excluding certain early retirement supplements and post-amendment credited service in the lump sum calculation, resulting in a lump sum value substantially lower than before the amendment and not the true actuarial equivalent of future retirement benefits. Third, the amendment violated ERISA § 204(b)(H)(i), 29 U.S.C. § 1054(b)(H)(i),[8] because benefit accrual ceased or the rate at which those benefits were accrued was reduced because of age. Finally, the 1994 amendment violated the back-loading rules of ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C),[9] by causing the rate of accrual to be more than 133% of any prior year's rate at the end of the period for which reduction factors are applied. (Sec.Am.Compl., ¶¶ 27–31.)

Count VI is another claim for breach of fiduciary duty by CBS as the Plan adminis-

> (2) For purpose of paragraph (1), a plan amendment which has the effect of (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy.

29 U.S.C. § 1054(g); *see also* Internal Revenue Code (IRC) § 411(d)(6), 26 U.S.C. § 411(d)(6).

**7.** ERISA § 204(c)(3) provides in pertinent part:

> In the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than annual benefit in the form of a single life annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefit derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).

29 U.S.C. § 1054(c)(3); *see also* IRC § 411(c)(3), 26 U.S.C. § 411(c)(3).

**8.** ERISA § 204(b)(H)(i) provides:

> A defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased or the rate of any employee's benefit accrual is reduced, because of the attainment of any age.

29 U.S.C. § 1054(b)(1)(H)(i); *see also* IRC § 411(b)(1)(H), 26 U.S.C. § 411(b)(1)(H).

**9.** ERISA § 204(b)(1)(A)-(C) provides in pertinent part:

> (1)(A) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which each participant is entitled upon his separation ... is not less than—
>
> (i) 3 percent of the normal retirement benefit to which he would be entitled at the normal retirement age if he commenced participation at the earliest possible entry age under the plan and served continuously until the earlier of age 65 or the normal retirement age specified under the plan, multiplied by
>
> (ii) the number of years (not in excess of $33\frac{1}{3}$) of his participation in the plan. In the case of a plan providing retirement benefits based on compensation during any period, the normal retirement benefit to which a participant would be entitled shall be determined as if he continued to earn annually the average rate of compensation which he earned during consecutive years of service, not in excess of 10, for which his compensation was the highest.
>
> (B) A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than $133\frac{1}{3}$ percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.
>
> (C) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which any participant is entitled upon his separation ... is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan as in effect on the date of his separation if he continued to earn annually until normal retirement age the same rate of compensation upon which his normal retirement benefit would be computed under the plan, determined as if he had attained normal retirement age on the date any such determination is made (but taking into account no more than the 10 years of service immediately preceding his separation from service). Such fraction shall be a fraction, not exceeding 1, the numerator of which is the total number of his years of participation in the plan (as of the date of his separation ... and the denominator of which is the total number of years he would have participated in the plan if he separated ... at the normal retirement age.)

trator, asserting that (1) CBS allegedly concealed details of changes to the Plan pursuant to which participants would not accrue any benefits if they wanted the lump sum option after December 31, 1994; (2) to the extent information was disclosed regarding changes to the Plan, those disclosures were intentionally misleading and confusing; and (3) such disclosures were made in a way which concealed the age-discriminatory nature of the amendments, as well as the company's intent to discriminate against older workers. CBS further breached its fiduciary duty when it represented that the Plan met the requirements of ERISA and the Internal Revenue Code (IRC) when in fact it violated ERISA § 3002(c), 29 U.S.C. § 1202(c),[10] and ERISA § 204(h), 29 U.S.C. § 1054(h),[11] as well the IRC and ERISA sections cited above in Count V. CBS thus intended to prevent Plan participants from objecting to the attempted changes and knew that its silence, together with the misrepresentation that the Plan was legal, would reduce the opportunity for Plan participants to challenge Defendant's conduct. As a result, Plan participants were harmed in that they (1) did not have an opportunity to challenge the attempted changes to the Plan, (2) did not have an opportunity to elect the lump sum option prior to December 31, 1994, and/or (3) did not know that they were victims of age discrimination. (Sec.Am.Compl., ¶¶ 32–35.)

## II. *REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23*

In determining whether these proposed classes should be certified, I will be guided by Fed.R.Civ.P. 23, which provides:

(a) *Prerequisites to a Class Action.*

One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.*

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already

---

29 U.S.C. § 1054(b)(1)(A)-(C).

**10.** ERISA § 3002(c), 29 U.S.C. § 1202(c), addresses regulations to be prescribed by the Secretary of the Treasury relating to minimum participation standards, minimum vesting standards, and minimum funding standards. It is unclear to the Court how an employer or plan administrator can violate this section.

**11.** ERISA § 204(h) provides:
Notice of significant reduction in benefit accruals.
(1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual,

unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date to (A) each participant in the plan, (B) each beneficiary who is an alternate payee... and (C) each employee organization representing participants in the plan....
(2) A plan is described in this paragraph if such plan is (A) a defined benefit plan, or (B) an individual account plan which is subject to the funding standards of section 1082 of this title.
29 U.S.C. § 1054(h).

commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23.

The first step of a class certification decision is to determine if the proposed classes meet the requirements of Fed.R.Civ.P. 23(a), that is, numerosity, commonality, typicality, and adequacy of representation. *Hoffman Elec. Inc. v. Emerson Elec. Co.*, 754 F.Supp. 1070, 1075–1078 (W.D.Pa.1991). Once that is accomplished, step two is for Plaintiffs to show that their suit also satisfies the criteria of Rule 23(b)(2) or, alternatively, Rule 23(b)(3) as they assert.

## III. *PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

### A. *Proposed Classes*

Plaintiffs seek certification of two ERISA classes. The first is defined as:

All former professional and management employees of Westinghouse [i.e., Defendant] who have been terminated after January 1, 1994 to interfere with their benefits and who were at least 40 years of age when terminated.[12]

(Plaintiffs' Motion for Class Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Docket No. 87, "Mot. for Class Cert.," at 2.)

Plaintiffs refer to this class as the "Section 510 Class" and it relates to Count II of the Complaint. A second class, the "Section 1054 Class" applicable to Counts IV, V and VI of the Complaint, is defined as

All participants in the Westinghouse Electric Company Pension Plan who took the lump sum option between January 1, 1995 up to the present.[13]

(Plfs.' Brief at 2.)

As a prerequisite to a Rule 23 class certification, the court must determine if the class is "sufficiently identifiable without being overly broad." *Sanneman v. Daimler-Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D.Pa. 2000). The proposed class may not be "amorphous, vague, or indeterminate" and it must be "administratively feasible to determine whether a given individual is a member of the class." *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D.Mo.1985). Here, Plaintiffs' definition of the Section 510 Class immediately creates certification problems by Inclusion of the phrase "who have been terminated ... to interfere with their benefits." To establish class membership, a putative plaintiff would have to show that Defendant violated his rights by selecting him for termination specifically to prevent him from acquiring benefits. As the court concluded in the *DaimlerChrysler* litigation, "determining membership in the class would essentially require a mini-hearing on the merits of each class member's case, which itself renders a class action inappropriate for addressing the claims at issue." *Id.* at 445; *see also, Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D.Pa.1995), finding a proposed class definition untenable because it required the court to address "the central issue of liability" in the case; *Dunn v. Midwest Buslines, Inc.*, 94 F.R.D. 170, 171–72 (E.D.Ark.1982), concluding that class certification was improper because it required "a finding of discrimination in order to define the class."

---

**12.** It should be noted that, as Defendant repeatedly argues, Plaintiffs have changed the class definitions numerous times in the course of this litigation. This is true even at the stage of submitting the motion for class certification and the brief in support thereof. The definition in the text above is that provided in the Mot. for Class Cert., but in the brief in support of that motion, the Section 510 Class is defined on page 7 as "All Westinghouse professional and management employees over 40 who have been involuntarily terminated to deny them employee benefits." I have chosen to use the definition above because I believe it is more precise.

**13.** Again, Plaintiffs have been inconsistent in defining this class. On page 2 of their Mot. for Class Cert., this class is defined as "all participants under the Westinghouse Pension Plan who have elected the lump sum after January 1, 1995." As above, I have chosen what I consider to be the more precise of the two latest definitions.

While a class definition may be modified either by the Court or by amendment offered by the plaintiff, I conclude that the underlying problems raised by this definition are reiterated in the commonality and typicality tests of Rule 23(a)(2) and (3) discussed below and are of sufficient concern for me to conclude that Section 510 Class as defined should not be certified.

As a second preliminary matter, I note that nowhere in the Motion for Class Certification nor in the brief in support thereof do Plaintiffs address Counts IV and VI of their complaint (breach of fiduciary duty), that is, they fail entirely to explain how the purported breaches would be addressed in a class action. Essentially, Plaintiffs appear to assume that certification of the two proposed classes will open the door for each ERISA claim in their Complaint to be pursued as a class action. Without such analysis, I am unable to determine whether the Rule 23(a) criteria can be applied to those breach of fiduciary duty claims and I decline to undertake such analysis *sua sponte*. As stated by the Honorable Judge Sylvia Rambo of the Middle District of Pennsylvania,

> the net effect of [Plaintiffs'] approach is to put the Court in the position of doing the parties' work for them. This Court has a full docket and plenty of work of its own without having to do lawyers' jobs for them.... A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority ... forfeits the point.

*Gossman v. Jiminez*, Civ. No. 91–0423, at 5 (M.D. Pa. April 17, 1992), *quoting United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir.1990); *see also, Pennsylvania Dept. of Pub. Welfare v. United States HHS*, 101 F.3d 939, 945 (3d Cir.1996)(noting that passing references, unaccompanied by substantive argument, will not suffice to bring an issue before the court) and *United States Fidelity & Guaranty Co. v. Barron Industries, Inc.*, 809 F.Supp. 355, 362 (M.D.Pa.1992)(*citing Gossman* ).

Because Plaintiffs have failed to offer any analysis, much less substantive argument, as to why Counts IV and VI or any other claims

related to Defendant's alleged breach of fiduciary duty in its administration of the Pension Plan should be pursued on behalf of either class, those Counts will not be addressed in the following discussion.

### B. *Standard of Review*

■ As the moving party, Plaintiffs have the burden of establishing that all relevant requirements of Rule 23 have been met. *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529 (W.D.Pa.1994), *citing Hoffman Elec.*, 754 F.Supp. at 1075. "In a doubtful case any error, if there is to be one, should be committed in favor of allowing the class action." *Walsh, id.* Furthermore, a court may not consider the merits of a plaintiff's case in determining the certification motion, but must focus on whether the requirements of Rule 23 have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Once a court has determined that it has jurisdiction over the individual claims, the decision to certify a class action for litigation of those claims is made at its discretion. *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). However, class certification requires a court to undertake "a vigorous analysis." *General Tele. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### IV. *RULE 23(a) ANALYSIS*

#### A. *Numerosity*

■ The numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable," keeping in mind, however, that impractical "does not mean impossible." *Hoffman Elec.*, 754 F.Supp. at 1075. It is well-established in this Circuit that joinder is impracticable and thus the numerosity requirement is satisfied if the proposed class numbers 100 or more. *Welch v. Board of Directors*, 146 F.R.D. 131, 135 (W.D.Pa.1993); *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 126 (E.D.Pa.1986). Plaintiffs frankly acknowledge that they do not know the exact number of potential members in either class. (Plfs.' Brief at 11.)

■ The report submitted by Plaintiffs' statistical expert, Charles R. Mann,[14] was based on two data files provided by CBS which included "data for any CBS ... employee who had held a professional or managerial (including executive) position with CBS at any time between January 1, 1991 through December 31, 1999." (Plfs.' Brief at Exh. L, Attachment B, Statistical Report, July 20, 2000.) The total number in this category for the ten-year period is over 100,000. *Id.* An analysis by the Court based on the tables attached to Mr. Mann's report shows that nearly 10,000 CBS professional and management employees were terminated during the period January 1, 1994 to December 31, 1999, and of this number, more than 3,300 were involuntary[15] terminations of individuals 40 years of age or older. Thus, I conclude that the numerosity requirement of Rule 23(a)(1) is satisfied for the Section 510 Class.

Plaintiffs do not provide any data for the number of individuals who elected the lump sum option between January 1, 1995 and the present. However, inasmuch as Defendant does not specifically object to Plaintiffs' assertion that the number of possible class members in this action meets the criterion for numerosity, I conclude that the numerosity requirement of Rule 23(a)(1) is also satisfied as to the Section 1054 Class.

B. *Common Questions of Law and Fact*

■ The commonality requirement is satisfied if there exist questions of fact or law common to all members of the prospective class. Common questions are those which arise from a "common nucleus of operative facts." *Feret v. CoreStates Fin. Corp.*, 1998 WL 512933, at *7, CA No. 97–6759, 1998 U.S. Dist. LEXIS 12734, at *22 (E.D.Pa. Aug. 18, 1998). This requirement is usually easily met because it is not necessary that every question of law or fact be common to each member of the class. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir.1994).

Factual differences among the claims of the putative class members do not defeat certification. *Id.*

■ Plaintiffs assert that the central question for the Section 510 Class is whether Defendant terminated professional and management employees over 40 in order to deny them employee benefits. (Plfs.' Brief at 12.) Plaintiffs further assert that this question is common to all members of the class "because there is only one Plan and all the class members ... are adversely affected in the same manner by [CBS's] ... termination policies and practices." *Id.* I must disagree with this assertion.

Plaintiffs propose the Section 510 Class to include "all former professional and management employees of [CBS]." However, the conclusion that "there is only one Plan" is simply erroneous when considered vis-a-vis the Section 510 Class definition. Plaintiffs do not dispute Defendant's assertion that CBS employed professionals and managers in numerous foreign countries under whose laws the provisions of ERISA did not apply and for whom individual benefit packages were designed. (Affidavit of Janet Hildebrand in Support of Defendant's Opposition to Plaintiffs' Mot. for Class Cert., Docket No. 101, ¶ 6.) There may have been only one Plan applicable to citizens of the United States as of January 1, 1994, but the Plan did not apply to foreign employees. Thus, the definition as stated would include individuals who were not covered by the Plan in which Mueller participated and to whom the provisions of ERISA § 510 would have been inapplicable. Second, as explained in my Opinion regarding ADEA certification, the fact that Plaintiffs do not provide a termination point for the period which began January 1, 1994 would theoretically compel the parties to undertake continuing notification to any individual who is terminated "to interfere with their benefits" until such time as this litigation is resolved. Furthermore, Plaintiffs offer no

14. Charles R. Mann, Ph.D., is employed by Charles R. Mann Associates, Inc., and retained by counsel for the Plaintiffs to analyze statistical data concerning the workforce of CBS. (Plfs.' Brief at Exh. L, Affidavit of Charles R. Mann, July 20, 2000.)

15. I have limited this calculation to involuntary terminations as opposed to voluntary separation or retirement on the theory that a termination would have to be involuntary in order to show Defendant's intent to interfere with attainment of benefits.

explanation why class membership should begin as of January 1, 1994. That date cannot be tied to the 1994 amendments because (1) those were not effective until January 1, 1995 and (2) Plaintiffs offer no evidence or even argument that the amendments and attainment of full benefits were in any way linked together. The January 1, 1994 date therefore appears to be entirely arbitrary. *See Selby v. Principal Mutual Life Insurance Co.*, 197 F.R.D. 48, 56 (S.D.N.Y.2000), noting that the class definition "must refer to a specific and bounded time frame in order to be workable."

Third, the class definition includes anyone over 40 years of age who was terminated "to interfere with their benefits." Presumably, an employee under 40 would also be entitled to *some* benefits upon termination even though those benefits might not be fully vested; CBS would recoup those costs to offset the pension fund deficit as readily as it would the cost of benefits due to an employee over 40. Moreover, the vague reference to "benefits" Implies that interference with any benefits available to a terminated employee would make that person eligible for class membership. That is, an employee over 40 who did not have significant pension accruals but whose life insurance, medical insurance and other welfare benefits were interrupted by his termination could theoretically qualify for this class.

Therefore, I conclude that while there may be an issue of whether Defendant terminated certain employees in order to deny them benefits as prohibited by ERISA, the requirement of commonality cannot be met for the Section 510 Class because the definition provided by Plaintiffs is overly broad, unacceptably vague and arbitrary. As Defendant points out, "plaintiffs must define precisely whom the purported class will include." (Defendant's Opposition to Plaintiffs' Mot. for Class Cert., Docket No. 103, "Def.'s Opp.," at 5, *citing Peterson v. Lehigh Valley Dist. Council,* 83 F.R.D. 474, 476 (E.D.Pa.1979), emphasis added.)

■ Plaintiffs offer the same arguments in support of their proposed Section 1054 Class pertinent to Count V, that is, all class members were adversely affected by elimina-

tion of the lump sum option after December 31, 1994 and there is only one Plan. Presumably, limiting class membership to "participants in the Westinghouse Electric Company Pension Plan" would exclude foreign employees subject to the pension laws in effect in their own countries, thus avoiding the first problem associated with the Section 510 Class definition. Again, however, the indefinite termination date "up to the present" makes this definition impermissibly vague and would cause ongoing notice and case management problems.

More importantly, if I correctly read the chart provided by Plaintiffs on pages 3 and 4 of their Brief, an employee who retired at age 65 would not be affected at all by the changes in the Plan because the "current plan" (presumably the pre-amendment Plan) monthly payment would be the same as the amended Plan payment under either the annuity or the lump sum election. The proposed class is thus overly broad because it includes employees who retired at 65 whose choice of the lump sum option could not have resulted in any loss to them either as the result of temporary cessation of additions to the fund or by elimination of the early retirement supplements which were part of the lump sum calculation. (Plfs.' Brief at 2, n. 2.)

Finally, although it is unclear if an employee hired after the 1994 amendment could choose a lump sum option when he retired, an employee in that category would not be injured as a result of the amendment because the terms of his employment benefits package would not have changed, i.e., no benefit decreased, between the time he was hired and the time he left the company. Yet that person is not excluded from the class definition because there is no requirement that class members had to have been covered by the Plan prior to January 1, 1995.

I conclude that Plaintiffs have failed to met their burden of showing a common question of law or fact applicable to either proposed class as defined.

## C. *Typicality*

■ "Typicality exists when the legal or factual positions of the class representa-

tives are sufficiently similar to the legal or factual positions of the other class members." *Welch*, 146 F.R.D. at 135. Typicality is distinguished from commonality in that the former considers the sufficiency of the named plaintiffs and the latter evaluates the sufficiency of the class itself. *Hassine v. Jeffes*, 846 F.2d 169, 176, n. 4 (3d Cir.1988). While the named plaintiffs' claims must be typical of the proposed class, they need not be identical. *Id.* at 176–177. This requirement is satisfied if the "class representative[s] ... possess the same interest and suffer the same injury as the class members." *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citations omitted). Atypical elements of a claim may be "adequately treated by judicious severance or use of subclasses or other separate treatment of individual issues." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985).[16]

■ The Section 510 claim is based on Plaintiff Mueller's experience of having been terminated approximately five months before his pension was to fully vest. He claims that CBS deliberately earmarked him for termination in order to avoid paying those full benefits and to recover the difference to help save a badly underfunded pension plan. Even assuming that Mueller's claims are true, I conclude that his claims cannot be considered typical of a class so broadly defined that it covers individuals who could be as much as twenty-five years away from qualifying for full pension benefits. The Section 510 Class claims are almost identical to those of the plaintiffs in *Safran v. United Steelworkers of America*, 132 F.R.D. 397 (W.D.Pa.1989). In *Safran*, plaintiffs claimed that they had been laid-off within weeks or months of qualifying for certain retirement benefits because the defendant intended to interfere with their pension rights in violation of ERISA § 510. *Id.* at 399. The court (Cohill, C.J.) refused to certify the class representatives because the putative class members were considerably younger than the proposed class representatives and thus "years away" from qualifying for those bene-

fits. The representatives and the class members were not similarly situated because the absent class members did not suffer the same alleged discrimination as the class representatives inasmuch as the timeframe in which they would qualify for such benefits was not the same as that of the named plaintiffs. *Safran*, 132 F.R.D. at 403. I find, therefore, that Mueller's claims as presented in the Second Amended Complaint and in the Motion for Class Certification are not typical of the Section 510 Class because he would have been severely impacted by Defendant's alleged discrimination while other members of the class who could not have retired at full benefits for several years would have suffered far fewer negative effects.

■ I also conclude that Harry Bellas may not serve as a class representative for the Section 510 Class because his claims fail to meet the typicality test. Satisfaction of the typicality requirement demands that the named plaintiff's individual circumstances not be "markedly different" from those of the class members and that the legal theory of the plaintiff and the class be the same. *Baby Neal*, 43 F.3d at 57–58. The legal argument of the Section 510 Class is that employees were dismissed to prevent them from attaining benefits, but Plaintiffs clearly state that "age was the causative factor in his [i.e., Bellas'] dismissal." (Sec. Am. Compl., ¶ 9.) Bellas was fired in 1997 at age 51, almost 14 years before he would have been entitled to full pension benefits. (*Id.*, ¶ 3.) Since Bellas' legal theory of age discrimination and his individual circumstances are "markedly different" from those of the putative members of the Section 510 Class, I find that he is not a typical member of the proposed class.

■ As to the Section 1054 Class, Plaintiff Oshinsky (who is not offered as a class representative for the Section 510 Class) asserts that by taking the lump sum option, she suffered reduction and/or elimination of an already accrued benefit, that the resulting lump sum value was substantially lower and not the true actuarial equivalent of future

---

**16.** *See also*, Fed.R.Civ.P. 23(c)(4) which provides "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class."

retirement benefits, that the 1994 amendment reduced the rate of her benefit accrual because of the attainment of a certain age, and that the amendments violated the ERISA prohibition of "backloading" benefits. These claims would appear to apply to any individual [17] who chose the lump sum payment as part of their separation package, whether that separation was voluntary or involuntary, and thus I conclude that her claims are typical of the Section 1054 Class as defined.

Defendant claims there are "substantial" typicality problems with this case because the class representatives' claims are subject to unique factual defenses. (Def.'s Opposition at 12, n.6.) However, as noted above, typicality is achieved by showing that the legal position of the named plaintiff is "sufficiently similar"—not identical—to those of the class as a whole. Even though they may have different factual histories regarding their separation from the company (e.g., Oshinsky voluntarily retired whereas Bellas and Mueller were fired), their underlying argument is the same—that they were similarly injured by the 1994 amendment to the Pension Plan. Therefore, I conclude that the named Plaintiffs' claims are typical of the Section 1054 Class as proposed.

D. *Adequacy of Representation*

Rule 23(a)(4) requires that the representative party and his counsel fairly and adequately protect the interests of the class. In determining whether this requirement has been met, I must determine: (1) whether the named plaintiffs have interests antagonistic to those of the class; and (2) whether plaintiffs' attorneys are qualified to conduct the proposed litigation. *Hoffman Elec.*, 754 F.Supp. at 1076; *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendant has the burden of showing that the proposed plaintiffs or counsel are inadequate. *Hoffman Elec., id.* Mere differences in respective interests are not sufficient to defeat an offer of a named plaintiff for the class; the standard under Rule 23(a)(4) is true antagonism between the class members and the putative representative(s). *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 610 (W.D.Pa.1983). Plaintiffs assert that there is no antagonism between the interests of any class members. (Plfs.' Brief at 14–15.)

*Adequacy of Mueller, Bellas and Oshinsky to serve as class representatives:* The primary objection raised by CBS to the named plaintiffs is their purported "profound lack of knowledge about this case, the complaints filed, and their roles as class representatives," thus making them inadequate representatives. (Def. Opp. at 12, n.6.) They also object to the fact that Ms. Oshinsky is a class representative only for two of the six claims. (*Id.*)

The legal knowledge of the putative class representatives is not an issue in determining their suitability to act on behalf of the other members, nor are they expected to be completely knowledgeable as to all the facts related to the class as a whole. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (reversing dismissal of class claims where representative was not well educated, did not understand the complaint, and had only "a very small degree of knowledge as to what the lawsuit was about.") Reading the excerpts from the depositions of the named plaintiffs provided by each party satisfies me that while perhaps uneducated in ERISA law, Plaintiffs are sufficiently familiar with the matters pertaining to this case so as to adequately represent the interests of the classes. More importantly, they have not demonstrated any "antagonism" to the class interests, that is, any "conflict that goes to the very subject matter of the litigation" between named and unnamed plaintiffs in a class action. *Georgia State Conference of Branches of NAACP v. Georgia*, 99 F.R.D. 16, 34 (S.D.Ga.1983).

---

**17.** While Plaintiffs offer only passing reference to the fact that Mueller and Bellas took the lump sum option upon their termination, I shall assume that their arguments regarding injuries incurred by that choice are similar to those of Oshinsky. (Mueller in Plfs.' Response to Def.'s Motion to Dismiss, Docket No. 14, at 2; Bellas at Sec. Am. Compl., ¶ 15.)

CBS renews its argument, first made in *Bellas v. CBS, Inc.*, CA 98–1455, that Bellas should be barred from serving as class representative because of his inherent conflict of interest related to his involvement in two concurrent class actions involving Defendant and its Pension Plan. (Def.'s Opposition at 9–10.) First, as noted above, Bellas may not serve as class representative for the Section 510 Class because the legal theory underlying his claim differs significantly from that of the proposed class. Second, as I have noted on at least two previous occasions,[18] the ERISA issues in *Bellas* and this case relate to two separate benefits—a "Special Retirement Pension" which was applicable when an employee was terminated through a "Permanent Job Separation" in *Bellas*, but a lump sum payment option available, presumably, to any employee who met the pre-amendment Plan criteria in this case. Furthermore, this case incorporates ADEA claims which are not part of *Bellas*. Defendants do not offer,[19] and I have been unable to discover, any case law in which a court has concluded that because a plaintiff represents a class in one pending action, he is, *per se*, unable to act in a similar capacity in another class action.

Rule 23(a)(4) does not require that the class representative be the best possible representative, but simply one who will pursue resolution of the controversy in the interests of the class and actively protect his legal interests. *Georgia, id.* at 28. I therefore conclude that the interests of Plaintiff Mueller and the putative class members are not antagonistic and he would be a suitable class representative for the Section 510 Class. Likewise, Plaintiffs Oshinsky and Bellas are suitable representatives for the Section 1504 Class.

*Adequacy of counsel:* In support of the second prong, adequacy of legal representation, Plaintiffs assert that Attorneys Gary Lynch, Colleen Ramage and John T. Tierney III "have a wealth of experience in litigating complex employee benefit cases" and point me to resumes theoretically attached to an affidavit of John T. Tierney (Plfs.' Brief at 14.) A careful review of all pleadings submitted to date fails to identify the affidavit and its attachments; however inasmuch as Defendant offers no objections to the qualifications of Plaintiffs' attorneys, I shall conclude that Plaintiffs' counsel are capable of conducting this litigation.

I therefore find that the requirements of Rule 23(a)(4) have been met as to both proposed classes.

Having reviewed all four prerequisites for establishing a class action, I find that the numerosity and adequacy prongs of Rule 23(a) have been met as they apply to both proposed classes. However, I conclude that Plaintiffs have failed to carry their burden under Rule 23(a)(2) of showing that there exist a class of plaintiffs with common legal or factual questions regarding violation of ERISA § 510. The proposed definition for the Section 510 Class—"all former professional and management employees of CBS who were terminated after January 1, 1994 to interfere with their benefits and who were at least 40 years of age when terminated"—is unjustifiably broad, including as it does employees who were not covered by the same ERISA-governed pension plan as the proposed class representatives Mueller and Bellas. Furthermore, in direct contradiction to the tenets of *Eisen v. Carlisle & Jacquelin, supra*, the court would be required to consider the merits of each would-be class member's claims before determining that he was a member of the class. Finally, neither Bellas nor Mueller is qualified to serve as class representative even if the previous objection were overcome by yet one more re-definition

---

18. See *Mueller*, Opinion and Order of Court, Docket No. 17, dated Feb. 7, 2000, and *Bellas*, Opinion and Order of Court, Docket No. 53, dated October 20, 2000.

19. *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D.Ohio 1995), offered by Defendant to support this argument, is readily distinguishable because plaintiff in that case was attempting to maintain a separate, individual suit on exactly the same issues she was asserting in a class action pending simultaneously. As discussed above, *Bellas* addresses issues entirely different from those raised in this case; in addition, no evidence has been offered to show that Bellas is individually pursuing any claims against Defendant.

of the class. Bellas' claims are not typical of those of the putative class, being founded in age discrimination, not violation of ERISA § 510. Mueller and the much younger class members cannot be considered similarly situated with regard to any discrimination inflicted by CBS in terminating them. I therefore decline to certify the proposed Section 510 Class on the grounds that the proposed class does not meet the commonality prerequisites and the claims of proposed class representatives Mueller and Bellas are not typical of the class.

Likewise, I conclude that the commonality criterion is not met for the Section 1054 Class because the definition is imprecise as to time period as well as over-inclusive in that it includes individuals who took the lump sum at age 65 despite the fact that those individuals were not negatively affected by the 1994 amendment. The class may also include individuals who were not participants in 1994 when the Plan was modified and thus could not have accrued benefits that were adversely affected by the changes to the Plan. Even if these shortcomings were alleviated by redefinition of the class, however, I conclude the Section 1054 Class cannot meet the criteria of Rule 23(b)(2) or (3).

## V. *RULE 23(b) ANALYSIS*

Once a plaintiff has demonstrated that he has meet the prerequisites of a class action set out in Rule 23(a), he still must cross the hurdle of showing that he can maintain the action by satisfying Rule 23(b). Analysis of Rule 23(b) is conducted in the alternative, that is, plaintiffs must demonstrate that their suit meets the criteria of Rule 23(b)(1), (b)(2) or (b)(3), and incorporates consideration of three additional issues: (1) appropriateness of final injunctive relief or corresponding declaratory relief with respect to the class as whole, (2) predominance of the common questions of law or fact pertaining to the class as opposed to individual questions, and (3) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Hoffman Elec.*, 754 F.Supp. at 1078–79; *Eisen*, 417 U.S. at 163, 94 S.Ct. 2140. Plaintiffs argue that their suit meets the criteria of either Rule 23(b)(2) or (b)(3).

### A. *Rule 23(b)(2)*

Rule 23(b)(2) is to be applied in those situations where the Defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs, relying on *Probe v. State Teachers' Retirement System*, 780 F.2d 776 (9th Cir.), *cert. denied* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986), argue that certification under Rule 23(b)(2) is applicable where the principal relief sought is an injunction with an ancillary damages claim. (Plfs.' Brief at 15.) Plaintiffs further state that they seek class-wide injunctive and declaratory relief to remedy the ERISA violations and they characterize any monetary relief as "equitable" because it "includes restitution for the additional costs Defendants [sic] imposed on plan participants" (although I am unable to ascertain from their pleadings what those additional costs might be). Injunctive and declaratory relief claims, according to Plaintiffs, predominate over the monetary damage claims. (*Id.*)

Plaintiffs appear to have lost sight of their original goals. According to their Second Amended Complaint, no declaratory judgment nor injunctive relief is sought for violations of ERISA § 1054.[20] While the remedy for violations of ERISA § 1054 is never precisely stated, the only relief sought for dis-

---

20. In the Second Amended Complaint, Plaintiffs' Prayer for Relief (excluding Parts A and B for class certification and the ADEA claims, respectively) consists of

C. Grant declaratory judgment to the effect that Defendant has violated § 510 of ERISA (29 U.S.C. § 1140) and appropriate injunctive relief to prevent violations of § 510 of ERISA;
D. Require Defendant to pay back pay and front pay and benefits to members of the Class who were discriminated against in employment because of their age and/or pension eligibility;
E. Require Defendant to pay pension benefits to members of the class who were injured because of violations by Defendant of the ADEA and ERISA;
F. Grant such further relief as may be just.

crimination because of "age and/or pension eligibility" or for non-specific violations of ERISA are "back pay and front pay and benefits" or "pension benefits."

Furthermore, no member of the Section 1054 Class, by definition, is still employed by CBS because taking the lump sum option is part of the severance process. Even if Defendant were found fully liable on all claimed ERISA § 1054 violations, no injunctive relief would recompense those class members for their losses; only monetary relief would be available to them. Rule 23(b)(2) does not authorize certification of a class where the requested relief is "exclusively or predominantly" related to money damages. *In re School Asbestos Litig.*, 789 F.2d 996, 1008 (3d Cir.1986), citing Rule 23(b)(2) and the advisory committee notes thereto.

On the other hand, if the class definition were modified to include Pension Plan participants currently employed who, in the future, could be negatively affected by the 1994 amendments to the Plan in violation of ERISA § 1054 (assuming such individuals exist), no named plaintiff could satisfy the typicality requirement for such a class because Mueller, Bellas and Oshinsky are no longer employed by CBS. Under Article III of the Constitution, the plaintiff seeking injunctive relief must demonstrate that he faces some "Immediate danger of direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–106, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). A class representative unable to seek injunctive relief would presumably have no incentive to represent vigorously class members who could assert such claims. *Ries v. Humana Health Plan, Inc.*, No. 94–C–6180, 1997 WL 158337, at *5 (N.D.Ill. March 31, 1997). In addition, it would be futile to seek additional named plaintiffs who are still employed, first, because they have suffered no injury from Defendant's 1994 amendment to the Plan inasmuch as they have not yet had to choose between the lump sum option and the annuity and secondly, the remedy for Defendant's violation of ERISA § 1054, if proven, would certainly include repealing the 1994 amendment, thus making injunctive relief unnecessary. Thus, assuming Plaintiffs were to prevail, there would be no currently employed plaintiff who could satisfy the *Lyons* test by showing that he faced immediate danger of a direct injury, nor a formerly employed plaintiff who could show that the illegal conduct is likely to be repeated as to him.

### B. *Rule 23(b)(3)*

Passing the test of Rule 23(b)(3) requires two steps. Plaintiffs must convince the Court first that questions of fact and law common to the members of the class predominate over any questions affecting only individual members, and second, that a class action would be superior to other methods to effect a fair and efficient adjudication of the controversy. Rule 23(b)(3), *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977). Rule 23(b)(3) is "framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations," but where class suit "may nevertheless be convenient and desirable." *Amchem Products v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), referring to the advisory committee comments. The Supreme Court has concluded that the predominance inquiry is "far more demanding" than the commonality requirement of Rule 23(a)(2). *Id.* at 624, 117 S.Ct. 2231. Since I have concluded that Plaintiffs have failed to meet the commonality criterion of Rule 23(a) with regard to the Section 1054 Class, it is impossible for them to meet the more demanding criteria of a Rule 23(b)(2) analysis. Plaintiffs appear not to make a serious effort at doing so because other than to restate the general considerations immediately above, they argue only that "the superiority of a class action in this case is also evident from other aspects of the case." (Plfs.' Brief at 16.) I find this statement a less than satisfactory argument in favor of certification, and, as stated in Section III.A. above, decline to do Plaintiffs' work for them by providing the necessary substantive argument to support their position.

Therefore, class certification is denied for each of the classes proposed by Plaintiffs inasmuch as they have failed to satisfy the requirements of Fed.R.Civ.P. 23(a) in the case of the proposed Section 510 Class and of

both Fed.R.Civ.P. 23(a) and 23(b) in the case of the proposed Section 1054 Class.[21]

---

**21.** Lest this denial of certification appear unduly harsh, let me point out that Plaintiffs filed their initial complaint on August 12, 1999, as a class action. When I denied their initial motion to certify the class (Docket No. 3; Memorandum Opinion and Order of February 7, 2000, Docket No. 16), Plaintiffs subsequently moved for, and were granted, discovery regarding class certification issues (Docket No. 34 and Order of May 25, 2000, respectively). Class certification discovery closed on July 12, 2000 (after a 21–day extension requested by Plaintiffs) and Plaintiffs filed their Motion for Class Certification on July 24, 2000. I believe that after nearly a year in which to become familiar with the facts of this case and, undoubtedly, much hard work by well-qualified and experienced attorneys, it is not unreasonable for the Court to expect a more precise definition than that proposed for either class. Furthermore, I decline to provide Plaintiffs with an opportunity to once again revise the class definitions as I did when conditionally certifying the ADEA class; the only change there was to add a termination date for the "lump sum option" sub-class, a relatively minor addition rather than major revisions which would require further substantial argument by both parties.